UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
STATE OF FLORIDA, and STATE OF
TEXAS, ex rel. JOHN TAYLOR and
TUNYA TAYLOR,

          Plaintiff-Relators,

v.                                                                    Case No. 8:19-cv-2169-JLB-CPT

THE MULTIPLAN NETWORK, CHUBB
COMPANY (AMERICA), CHUBB
COMPANY (INTERNATIONAL), HLA
ENROLLMENT CENTER, FEDERAL
INSURANCE COMPANY,
ADMINISTRATIVE CONCEPT INC. a/k/a
ACI, MY BENEFITS KEEPER a/k/a MBK,
MPH ACQUISITION HOLDING LLC, and
POLARIS INTERMEDIATE CORP d/b/a
MULTIPLAN,

          Defendants.
_____/

## **O R D E R**

     This case comes to the Court following remand from the U.S. Court of

Appeals for the Eleventh Circuit issued prior to the undersigned's reassignment of

this case.  John and Tunya Taylor (collectively, "the Taylors") filed a <u>qui tam</u> action

raising claims under the False Claims Act ("FCA") and other federal and state law

claims.  Their amended complaint was dismissed for failure to obtain counsel.  The

Eleventh Circuit affirmed the dismissal of the <u>qui tam</u> claims but reversed as to the

dismissal of the remaining claims, directing that the Court "[o]n remand . . .

separately analyze the Taylors' additional 21 claims."  (Doc. 30 at 4.)  The case was

reopened and reassigned, and several defendants have moved to dismiss for lack of personal jurisdiction and failure to properly effect service.  Upon careful review, the motions (Docs. 40, 44, 53) are **GRANTED in part**, and the amended complaint (Doc. 5) is **DISMISSED with leave to amend**.

## BACKGROUND

In 2019, the Taylors filed a qui tam complaint against several entities, raising violations of the False Claims Act and several other federal and state law claims.  (Docs. S-1, 5.)  Essentially, they allege that "the MultiPlan Network, many of their insurance company affiliates, and many others [sic] third party selling agency's [sic] and down stream [sic] entities associated with the MultiPlan [N]etwork, are actively committing fraud on the American people."  (Doc. 5 at 7, ¶ 81.) Specifically, the Taylors allege that they communicated via telephone with, and received marketing materials from, HLA Enrollment Center, a third-party selling agency that is "directly correlated" with Chubb Company and the MultiPlan Network, and that, as result of fraudulent and misleading communications and materials, they were tricked into purchasing a non-major benefit policy containing a MultiPlan PPO network product.  (Id. ¶¶ 154, 162, 168, 185–86 192–95.)

Following the United States' decision not to intervene, the Court dismissed all counts with prejudice for failure to obtain counsel as required in qui tam actions. (Docs. 17, 23); see Timson v. Sampson, 518 F.3d 870, 873–74 (11th Cir. 2008).  That order also unsealed the amended complaint.  (Doc. 23 at 3.)  The Eleventh Circuit affirmed the decision in part and reversed it in part, finding that the qui tam claims

should have been dismissed without prejudice and that, absent any explanation, the remaining claims should not have been dismissed with prejudice.  (Doc. 30.)

After the Eleventh Circuit's decision but before entry of its mandate, the district court directed the Taylors to serve process on the Defendants within sixty days and to file the returns of such service within seventy-five days.  (Doc. 31.)[1] The Taylors filed a notice in which they represented that all Defendants were served with the amended complaint and the Court's order.  (Doc. 33.)  The Court then stayed the case pending entry of the Eleventh Circuit's mandate and denied without prejudice the Taylors' subsequent motion for a clerk's default.  (Docs. 34, 35, 36.)  In October 2021, the case was reassigned to the current judge and the Eleventh Circuit issued its mandate.  (Docs. 37, 38.)

The Taylors renewed their motion for entry of a clerk's default and default judgment against Defendants, which was denied.  (Docs. 39, 50.)   In the order denying the motion, the Magistrate Judge determined that:

> The Taylors have not filed the requisite proof with the Court demonstrating that they have properly served each Defendant or that the Defendants have waived service. See Fed. R. Civ. P. 4(l)(1) (setting forth the evidentiary criterion for proving service). The Court notes in this regard that the Federal Rules of Civil Procedure contain particular instructions governing, inter alia, the contents of service, Fed. R. Civ. P. 4(c)(1), who may effect service, Fed. R. Civ. P. 4(c)(2), and the method of serving a domestic or foreign corporation (or a partnership or other

---

[1] That order further reopened the case and, consistent with the Eleventh Circuit's decision, directed that the Taylors' qui tam claims be dismissed without prejudice.  (Doc. 31 at 2; Doc. 30 at 3.)  To the extent that order was without effect as it was entered prior to entry of the Eleventh Circuit's mandate, the Court again directs that those claims are dismissed without prejudice.

> unincorporated association that is subject to suit under a common name), Fed. R. Civ. P. 4(h). The Taylors' notice, however, does not evidence that they have adhered to the requirements laid out in these provisions.

(Doc. 50 at 4–5.)

Defendants MultiPlan, Inc. ("MultiPlan"), MPH Acquisition Holding LLC ("MPH"), and Polaris Intermediate Corp. ("Polaris") (collectively, the "MultiPlan Defendants") and Defendant My Benefits Keeper now move to dismiss the action for insufficient process and service of process. (Docs. 40, 53.) MPH and Polaris also contend that dismissal is warranted because this Court lacks personal jurisdiction over them. (Doc. 40 at 6–17.) Defendants Chubb Company (America) and Chubb Company (International) (collectively, the "Chubb Defendants"), as well as Defendant Federal Insurance Company, move to dismiss based on insufficient and untimely service of process. (Doc. 44.) The Taylors have responded in opposition. (Docs. 42, 45, 51, 52.)[2]

## DISCUSSION

First, upon review of the Taylors' remaining claims, the amended complaint is due to be dismissed as an impermissible shotgun pleading. Second, the Taylors'

---

[2] The Taylors initially asserted that "[n]o response shall be given at this time unless required by the District Court." (Doc. 45 at 2.) In light of their pro se status, the Court directed the Taylors to respond to the motions to dismiss and provided them with a copy of the "Guide for Proceeding Without a Lawyer." (Doc. 51.) And although the Taylors observe that their response was prepared in less than 72 hours and without the benefit of counsel, the Court provided them substantially more time in which to respond and did not restrict their ability to obtain counsel. (Id.; Doc. 52 at 24.) They also filed motions to strike Defendants' motions, which were denied. (Docs. 41, 46, 49.) The Taylors did not respond to My Benefits Keeper's motion to dismiss, and the time to do so has expired.

purported return of service is defective and due to be quashed for insufficient process and service of process.  Although dismissal for failure to timely serve Defendants is not at this stage warranted, if the Taylors decide to file a second amended complaint, they must serve process consistent with the Federal Rules of Civil Procedure.

## I.     The Taylors' Remaining Claims

As noted, the Eleventh Circuit affirmed the dismissal of the <u>qui tam</u> claims but reversed as to the other claims because, absent any explanation, the remaining claims should not have been dismissed with prejudice by the predecessor district judge.  (Doc. 30.)  The Eleventh Circuit further instructed that the Court "[o]n remand . . . will need to separately analyze the Taylors' additional 21 claims."  (<u>Id.</u> at 4.)  Upon review, the rationale supporting dismissal of the <u>qui tam</u> claims—that the Taylors failed to obtain counsel—does not support dismissal of the remaining claims.  Accordingly, the remaining claims are not dismissed on this basis.  Beyond this, it is difficult to analyze the remaining claims—and the amended complaint is due to be dismissed—because the amended complaint is a shotgun pleading.  <u>See</u> <u>Jackson v. Bank of Am., N.A.</u>, 898 F.3d 1348, 1357–58 (11th Cir. 2018) (instructing that a shotgun pleading should be stricken even if a party does not move to strike the pleading).

The Eleventh Circuit has explained that a complaint constitutes a shotgun pleading where it: (1) "contain[s] multiple counts where each count adopts the allegations of all preceding counts"; (2) is "replete with conclusory, vague, and

immaterial facts not obviously connected to any particular cause of action"; (3) does "not separat[e] into a different count each cause of action or claim for relief"; or (4) "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322–23 (11th Cir. 2015).  "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323.

The Taylors' amended complaint, comprised of 334 paragraphs, is one such shotgun pleading and suffers numerous deficiencies.  For example, the complaint alleges 24 various "constitutional" and Florida state "violations," but raises 22 different causes of action.  (Doc. 5 at 5–6.)  The defendant against whom the violation or cause of action is alleged is not specified.  (Id.)  In a separate section in the complaint, the Taylors also allege various "violations," often failing to specify the defendant against whom the violation is alleged.   (See, e.g., ¶¶ 256–57, 264–73, 276–80, 287–98.)  It is unclear whether the "violations" support the identified "causes of action," not all causes of action are supported by separately identified factual allegations, and the Taylors do not appear to raise claims against all Defendants.  (Compare id. at 6, with id. at 21– 25.)  Additionally, throughout the "factual background" in the complaint, the Taylors allege various immaterial facts,

legal arguments, standards, and conclusions.  (See, e.g., ¶¶ 74–153, 170–171, 193–251.)

In other words, the complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," fails to clearly "separat[e] into a different count each cause of action or claim for relief," and "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  See Weiland, 792 F.3d at 1322–23.  In short, the allegations fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Id. at 1323.

Accordingly, after undertaking the analysis directed by the Eleventh Circuit as to the remaining claims, the Court finds that the amended complaint is due to be dismissed as a shotgun pleading.  The Taylors shall have an opportunity to amend their pleading.  See Arrington v. Green, 757 F. App'x 796, 797 (11th Cir. 2018).

## II.    Personal Jurisdiction as to MPH and Polaris

As the MultiPlan Defendants correctly contend, the Court lacks personal jurisdiction over MPH and Polaris.  To determine whether personal jurisdiction exists, courts consider: "(1) whether personal jurisdiction exists over the nonresident defendant . . . under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution."  Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1350 (11th Cir. 2013) (citation omitted).  Here, the Taylors have not

alleged sufficient facts to satisfy Florida's long-arm statute as to either general or specific personal jurisdiction over MPH or Polaris.  Moreover, the exercise of jurisdiction would violate due process.[3]

1. Florida's Long-Arm Statute

"A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction . . . ; and second, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction . . . if the defendant engages in substantial and not isolated activity in Florida." Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1203–04 (11th Cir. 2015) (quotation omitted).  Here, neither specific nor general personal jurisdiction exists.

First, the Taylors have not alleged sufficient facts to establish specific personal jurisdiction as to MPH or Polaris and fail to identify any applicable section of the long-arm statute that would support specific personal jurisdiction.  In all events, no section of the long-arm statute is satisfied.

For example, section 48.193(1)(a)(1) establishes jurisdiction over a person where the cause of action arises from the person's "[o]perating, conducting,

_____

[3] The Taylors bear the initial burden of alleging sufficient facts to establish a prima facie case of personal jurisdiction.  See Cable/Home Commc'n v. Network Prods., 902 F. 2d 829, 855 (11th Cir. 1990).  When a defendant submits affidavit evidence to support its challenge, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction.  See Louis Vuitton Malletier, 736 F.3d at 1350 (citation omitted).  Despite being directed to respond to the motion to dismiss, the Taylors have not presented evidence or even addressed MPH and Polaris's challenge to personal jurisdiction.  (Docs. 40, 41, 42, 51, 52.)

engaging in, or carrying on a business or business venture in this state or having an office or agency in this state."[4]  Here, there are no such activities alleged.  The Taylors' conclusory allegation that MPH and Polaris "transact business in the United States" is insufficient to establish business in Florida.  (Doc. 5 at 5, ¶¶ 20–21.)  Next, section 48.193(1)(a)(2) requires that the cause of action arises from the person's "[c]ommiting a tortious act within this state."  There are, again, no allegations that MPH or Polaris committed a tortious activity in Florida.  And the last section of the long-arm statute that could plausibly pertain to the conduct alleged, section 48.193(1)(a)(4), requires that the cause of action arises from the person's "[c]ontracting to insure a person, property, or risk located within this state at the time of contracting."  However, there are no such allegations as to MPH or Polaris.

Instead, as demonstrated by the record evidence, MPH and Polaris lack any connection to Florida that would support specific personal jurisdiction.  Polaris and MPH are merely Delaware holding companies without employees.  (Doc. 40-2 ¶¶ 6–

---

[4] For a defendant to "carry[] on business," its activities must be "considered collectively and show a general course of business activity in the state for pecuniary benefit."  RMS Titanic, Inc. v. Kingsmen Creatives, Ltd., 579 F. App'x 779, 783 (11th Cir. 2014) (quotation omitted).  This "can be satisfied either by (1) doing a series of similar acts for the purpose of thereby realizing pecuniary benefit or (2) doing a single act for such purpose with the intention of thereby initiating a series of such acts."  Id. at 783–84 (quotations omitted).  Factors relevant to whether a defendant engaged in a "general course of business activity" include "(1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients."  Id. at 784 (quotation omitted).  Simply put, no factor is satisfied.

11.)  Further, the Taylors' allegations that Polaris is the parent company of MPH and that MPH is the parent company of MultiPlan are insufficient to support personal jurisdiction.  (Doc. 5 at 7, ¶¶ 78–79); see, e.g., Yellow Pages Photos, Inc. v. Ziplocal, LP, No. 8:12-cv-755-T-26TBM, 2012 WL 5830590, at *3 (M.D. Fla. Nov. 16, 2012) ("The relationship of parent-subsidiary is insufficient alone to confer personal jurisdiction over the foreign parent corporation in the forum in which the subsidiary acts.").  As the Eleventh Circuit has explained:

> Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there.  Where the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary.

Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000); see also Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1272 (11th Cir. 2002).

The amended complaint lacks allegations to establish the requisite level of control by MPH and Polaris over MultiPlan to establish specific personal jurisdiction.  Further, the unrefuted evidence demonstrates that MPH and Polaris are Delaware holding companies that do not have any employees, are not registered to do business in Florida, do not operate, conduct, engage, or carry on any business or business venture in Florida, do not maintain, own, lease, use, or possess any office or real property in the Florida, are not engaged in any solicitation or service activity in Florida, and do not produce, manufacture, or distribute goods.  (Doc. 40-2

¶¶ 6–11.)  Lastly, the Taylors do not refute with evidence the MultiPlan Defendants' showing that MPH and Polaris do not do business in any state as MultiPlan or The MultiPlan Network, do not own MultiPlan's PPO networks, and were not involved with the "MultiPlan network policy" at issue in the amended complaint.  (Id. ¶¶ 8, 11.)

MPH and Polaris are also not subject to general personal jurisdiction under Florida's long-arm statute.  Section 48.193(2) provides that a nonresident who engages in "substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts for this state, whether or not the claim arises from that activity."  Substantial and not isolated activity means activity that is "continuous and systematic."  Wiggins v. Tigrent, Inc., 147 So. 3d 76, 85 (Fla. 2d DCA 2014); see also Carmouche, 789 F.3d at 1205 ("[A] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.").  In short, for the reasons discussed above, Polaris and MPH have not had "substantial and not isolated activity" in Florida, and general personal jurisdiction does not exist.

Even if the Taylors could establish a basis supporting specific or general personal jurisdiction over MPH and Polaris, they have not shown that the exercise of jurisdiction over MPH and Polaris would comport with due process.  In specific personal jurisdiction cases, courts examine: (1) whether the plaintiff's claims arise

out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. See Louis Vuitton Malletier, 736 F.3d at 1355 (quotation omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id. (quotation omitted). In evaluating fair play and substantial justice, courts consider "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." Id. at 1358 (quotation omitted).

    In short, the Taylors have failed to make the requisite showing as to the first two prongs. Indeed, they did not respond to MPH and Polaris's challenge to personal jurisdiction. In all events, the record evidence does not establish that the Taylors' claims arise out of MPH or Polaris's contacts with Florida, or that MPH and Polaris have minimum contacts with Florida or otherwise purposefully availed themselves of the privilege of conducting activities in Florida. See Louis Vuitton, 736 F.3d at 1355–56. Even assuming the Taylors satisfied the first two prongs, absent any showing that MPH and Polaris have contacts with Florida, or that Florida has a strong interest in the adjudication of the dispute, the exercise of

personal jurisdiction would not comport with traditional notions of fair play and substantial justice.  In summary, the Court lacks personal jurisdiction over MPH and Polaris, and dismissal is warranted.

## III.   Insufficient Process and Service of Process

Turning to the issue of process, the Taylors have failed to properly serve process on all Defendants, and their "Notice of Service of Amended Complaint and District Court Order" (Doc. 33) is due to be quashed.

It is well-settled that service of process must be properly effected before a federal court may exercise jurisdiction over a defendant.  See Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990).  A party challenging process under Federal Rule of Civil Procedure 12(b)(4) "must identify substantive deficiencies in the summons, complaint or accompanying documentation."  Fly Brazil Grp., Inc. v. Gov't of Gabon, Afr., 709 F. Supp. 2d 1274, 1279 (S.D. Fla. 2010) (citation omitted).  Similarly, a party challenging service of process under Rule 12(b)(5) must specify "the particular way or ways in which the serving party failed to satisfy the service-of-process rules."  Id. (citation omitted).  The plaintiff then bears the burden of proving adequate service of process.  Id.  Courts "may consider the parties' affidavits, depositions, and oral testimony in resolving disputed questions of fact" on a motion to dismiss for insufficient service of process.  Devs. Sur. & Indem. Co. v. Italian Cast Stone, Inc., No. 8:16-cv-3491-T-24TGW, 2017 WL 3113469, at *2 (M.D. Fla. May 5, 2017) (citation omitted).  Upon a showing of insufficient process, courts can either "dismiss the complaint or . . . quash the service and require the plaintiff

to re-attempt service of process." Smith v. Conner, No. 8:12-cv-52-T-30AEP, 2013 WL 268685, at *2 (M.D. Fla. Jan. 24, 2013) (quotation omitted).

Here, Defendants have specified deficiencies in the Taylors' process and service of process, and the Taylors have not carried their burden to prove adequate service of process. As noted, after the Eleventh Circuit's decision but before entry of its mandate, the district court instructed the Taylors to serve their complaint on the Defendants within sixty days and to file the returns of service within seventy-five days. (Doc. 31.) The Taylors subsequently filed a notice in which they represented that all the Defendants were served with the amended complaint and the district court's order. (Doc. 33.) That purported "Notice of Service" states as follows:

> This is the official notice from the Relators to the court that all co-defendants in this complaint have been served the Amended complaint and District court order filed on 8/20/2020 . . .
>
> **CERTIFICATE OF SERVICE**
>
> The undersigned hereby certifies that a copy of this complaint and written disclosure of substantially all material evidence and information Realtor [sic] possesses has been served on the Government as provided in FRCP 4.

(Doc. 33.) The notice is dated September 28, 2020, appears to be unsworn and signed by Mr. Taylor, and does not specify the method of service. (Id.)[5] It is, however,

---

[5] Defendants do not challenge whether the Taylors' proof of service complies with the Federal Rules of Civil Procedure. See Udoinyion v. Guardian Sec., 440 F. App'x 731, 735 (11th Cir. 2011) (noting that, under Rule 4(l)(1), "[t]he plaintiff must make proof of service to the court by submitting the server's affidavit"). In all events, "[f]ailure to prove service does not affect the validity of service. The court may permit proof of service to be amended." Fed. R. Civ. P. 4(l)(3).

undisputed that the Taylors attempted service via U.S. mail and without a summons, inconsistent with the Federal Rules of Civil Procedure.  (See, e.g., Doc. 52 at 6.)

Rule 4(h) provides that "a domestic or foreign corporation, or a partnership or other unincorporated association . . . must be served . . . in the manner prescribed by Rule 4(e)(1) for serving an individual," or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant."   Fed. R. Civ. P. 4(h)(1).   Rule 4(e)(1) provides that "an individual . . . may be served" by, among other methods, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."[6]

_____

[6] In Florida, process may be served on certain officers of a corporation, "any agent transacting business for [the corporation] in this state," "the agent designated by the corporation under [section] 48.091," or, if the corporation did not comply with section 48.091, "on any employee at the corporation's principal place of business or on any employee of the registered agent."  Fla. Stat. § 48.081(1)–(3); see also Fla. Stat. § 624.422 (service on an insurance carrier).

In New York, service on a corporation "shall be made by delivering the summons" to the corporation's "officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1).  While New York does allow service by mail, the plaintiff must send "by first class mail, postage prepaid, a copy of the summons and complaint . . . together with two copies of a statement of service by mail and acknowledgment of receipt in the [prescribed] form . . . with a return envelope, postage prepaid, addressed to the sender."   Id. § 312-a(a).   Service is not complete until "the date the signed acknowledgement of receipt is mailed or delivered to the sender."  Id. § 312-a(b); see Obot v. Citibank S. Dakota, N.A., 347 F. App'x 658, 659–60 (2d Cir. 2009) (finding that defendant had not been properly served where no statement of service or acknowledgement of receipt was included with the mailing).

15

Defendants have presented unrefuted evidence that the Taylors have not attempted to serve either MPH or Polaris, and their attempt to serve MultiPlan by providing a copy of the complaint without a summons via certified mail does not satisfy the Federal Rules of Civil Procedure.  (Doc. 40-1 ¶¶ 7–8, 10); see, e.g., Penn-Am. Ins. Co. v. Deslin Hotels, Inc., No. 6:11-cv-1990-Orl-22TBS, 2013 WL 12158616, at *1 (M.D. Fla. Jan. 10, 2013) ("Service by certified mail is not permitted under the federal rules and is generally insufficient under Florida law, unless accompanied by a waiver of personal service."); Santilli v. Cardone, No. 8:07-cv-308-T-23MSS, 2008 WL 2790242, at *4 (M.D. Fla. July 18, 2008) (dismissal for failure to include summons).  Similarly, Federal Insurance Company obtained a copy of Mr. Taylor's "opening statement," a copy of the court's order directing service, and the amended complaint without a summons from a post office in Warren, New Jersey.  (Doc. 44-1 ¶¶ 6–9.)  The same documents were also sent via U.S. mail to "Chubb Company" and My Benefits Keeper.  (Id. ¶¶ 7–8, 10; Doc. 53-1 at 2, ¶¶ 3–5.)[7]  In short, Defendants have shown that the Taylors' methods of service and their failure to include a summons are inconsistent with the Federal Rules of Civil Procedure.

In response, the Taylors raise several unpersuasive arguments to support their service of process.  First, they contend that Defendants were electronically served with a copy of the amended complaint during the appeal and that such

---

[7] There is also evidence reflecting that Chubb Company (America), Chubb Company (International), and My Benefits Keeper are not legal entities.  (Doc. 44-1 at 3, ¶ 4; Doc. 53-1 at 1, ¶ 1.)  It is unnecessary to address this contention to resolve Defendants' motion to dismiss.

service comports with Federal Rule of Civil Procedure 5(d)(1)(B).  (Doc. 52 at 5–6.)

However, Rule 5(d)(1) relates to certificate of service of papers "after the

Complaint," not service of process, which is governed by Rule 4.  See Hardy v.

Ruffin, No. 2:18-cv-1477-KOB, 2018 WL 7286499, at *2–3 (N.D. Ala. Dec. 6, 2018).

And again, no summons was included in the service of process.  Accordingly, any

electronic notice provided during the appeal is insufficient to satisfy Rule 4's

requirements, and any other purported improprieties during the appeal are

immaterial.  (See, e.g., Doc. 52 at 14); see also Martin v. Frail, No. SA-09-CA-695-

OG, 2010 WL 11506661, at *10 (W.D. Tex. Sept. 10, 2010) ("Plaintiff cites no

authority suggesting that electronic service through the Court's CM/ECF system on

[defendant's] counsel . . . would satisfy the requirements of Rule 4(h) or Texas law

for service of process . . . ."); cf. Prewitt Enters., Inc. v. Org. of Petroleum Exp.

Countries, 353 F.3d 916, 924 n.14 (11th Cir. 2003) (finding that actual notice of

lawsuit is insufficient to establish adequacy of service).  The Taylors' reliance on

Florida Rule of Civil Procedure 1.510, which relates to motions for summary

judgment, is also unavailing.  (Doc. 52 at 4.)

The Taylors also appear to argue that Defendants have failed to make an

appearance and, as corporations, cannot proceed pro se.  (Doc. 52 at 4, 10, 15.)

However, contrary to these contentions, Defendants are represented by counsel and

have appeared in this action to move to dismiss the amended complaint.  (Doc. 40 at

1, 25; Doc. 44 at 1, 9; Doc. 54.)  The Taylors further maintain that Defendants have

defaulted and that their motions and unidentified declarations are due to be

stricken.  (Doc. 52 at 6, 13, 19, 21.)  As previously determined, however, such relief is inappropriate.  (Docs. 49, 50.)  And although the Taylors appear to concede possible defects in service and observe that they are pro se, their pro se status does not waive the requirements of Rule 4.  (Doc. 52 at 4, 7); see Walker v. Firestone, No. 2:07-cv-0105-RWS, 2008 WL 2744391, at *2 (N.D. Ga. July 11, 2008).

Despite the Taylors' noncompliance with the Federal Rules of Civil Procedure, given the procedural posture of the case and the Taylors' pro se status, dismissal of the complaint on this basis is unwarranted.  See Smith v. Conner, No. 8:12-cv-52-T-30AEP, 2013 WL 268685, at *2 (M.D. Fla. Jan. 24, 2013) (collecting cases for proposition that either dismissal or directing service is allowed).  Rather, the appropriate remedy is to quash the return of service and, should the Taylors file a second amended complaint, require them to reattempt service of process consistent with the Federal Rules of Civil Procedure.

## IV.   Untimely Service

The Chubb Defendants alternatively contend that dismissal is warranted because the Taylors failed to timely effect service under Rule 4(m) of the Federal Rules of Civil Procedure.  Rule 4(m) provides as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Good cause exists "only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." <u>Lepone-Dempsey v. Carroll Cnty. Comm'rs</u>, 476 F.3d 1277, 1281 (11th Cir. 2007) (citation and brackets omitted).  Absent good cause, "the district court must still consider whether any other circumstances warrant an extension of time based on the facts of the case.  Only after considering whether any such factors exist may the district court exercise its discretion and either dismiss the case without prejudice or direct that service be effected within a specified time."  <u>Id.</u> at 1282.  Although courts generally apply Rule 4(m) to <u>qui tam</u> actions, the service window typically "begins with the unsealing of the complaint."  <u>United States ex rel. Clarke v. Healthsouth Corp.</u>, No. 8:14-cv-778-T-33TGW, 2019 WL 11502531, at *1 (M.D. Fla. May 24, 2019) (collecting cases).[8]

The Taylors initiated this action by filing a <u>qui tam</u> complaint, which was amended and not unsealed until entry of the order dismissing the case with prejudice.  (Docs 1, 5, 23.)  The district court's order was appealed, and the Eleventh Circuit's mandate was not entered until October 12, 2021.  (Docs. 25, 27, 38.)  The Chubb Defendants have cited no authority supporting the proposition that the

---

[8] That said, the FCA requires a complaint to be filed under seal and "not [to] be served on the defendant until the court so orders."  31 U.S.C. § 3730(b)(2).  Further, "[t]he defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure."  31 U.S.C. § 3730(b)(3).  Some courts have thus reasoned that the service period under Rule 4(m) begins when the court orders service, not upon the unsealing of the complaint.  <u>See, e.g.</u>, <u>United States ex rel. Weiner v. Siemens AG</u>, No. 1:12-cv-1466-ALC, 2021 WL 3544718, at *2–3 (S.D.N.Y. Aug. 10, 2021); <u>United States ex rel. Maharaj v. Est. of Zimmerman</u>, 427 F. Supp. 3d 625, 651 (D. Md. 2019).

ninety-day period to effect service begins on the date a complaint is unsealed when the order unsealing the complaint is immediately appealed.  And although there was an intervening order by the district court directing the Taylors to effect service within sixty days, the Eleventh Circuit had yet to issue its mandate.  (Docs. 30, 31); see Gill v. Comm'r of Internal Revenue, 306 F.2d 902, 906 (5th Cir. 1962) ("In the absence of any action by the Supreme Court, a Court of Appeals retains jurisdiction, and none is relinquished to the district court, until a mandate or judgment is issued.").  In fact, following the Taylors' notice of service, the district court "stayed" the case "during the pendency" of the appeal and, in light of the stay, denied a subsequent construed motion for clerk's default.  (Docs. 33, 34, 35, 36.)

In all events, because ninety days had not elapsed from either the entry of the Eleventh Circuit's mandate or an effective order directing service from this Court—and dismissal is warranted on an independent basis—the Chubb Defendants' request for dismissal under Rule 4(m) is due to be denied.  Should the Taylors decide to file a second amended complaint, the Taylors are directed to serve process consistent with the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons above, it is **ORDERED**:

1.      Defendants' motions to dismiss (Docs. 40, 44, 53) are **GRANTED in part**.

2.      The claims against MPH and Polaris are **DISMISSED without prejudice** for lack of personal jurisdiction.

3.      The Taylors' amended complaint (Doc. 5) is **DISMISSED without prejudice** as an impermissible shotgun pleading.

4.      The Taylors may file a second amended complaint consistent with this Order on or before March 14, 2022.

5.      The Taylors' purported return of service (Doc. 33) is **QUASHED**.

6.      If the Taylors decide to file a second amended complaint, they are **DIRECTED** to effect service of process consistent with the Federal Rules of Civil Procedure.

7.      To the extent necessary, the Court **reinstates** its prior ruling entered pending entry of the Eleventh Circuit's mandate.  (Doc. 31.)  The stay is **lifted**, and the Taylors' qui tam claims are **DISMISSED without prejudice**.

**ORDERED** in Tampa, Florida, on February 25, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE